**HOCHSTETLER LIVING TRUST, Appellant,**

v.

**FRIENDS OF the PUMPKINVINE NATURE TRAIL, INC., Appellee.**

No. 20A03–1009–PL–490.

Court of Appeals of Indiana.

April 1, 2011.

Randy J. Spitaels, Kindig & Sloat, P.C., Nappanee, IN, Attorney for Appellant.

James R. Byron, Charles H. Grodnik, Lisa Gilkey Schoetzow, Thorne · Grodnik, LLP, Elkhart, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Friends of the Pumpkinvine Nature Trail, Inc. ("the Nature Trail") filed an action in Elkhart Superior Court against the Hochstetler Living Trust ("the Trust") seeking to quiet title in a certain strip of land, and the Trust filed a counter-claim against the Nature Trail. The parties then filed cross-motions for summary judgment, and the trial court entered summary judgment in favor of the Nature Trail, concluding that the Nature Trail held a fee simple interest in the land at issue. On appeal, the Trust claims that the Nature Trail's quiet title action was barred by claim preclusion. We affirm.

### Facts and Procedural History

At issue in this case is an eighty-foot wide strip of land ("the disputed tract") sold to a railroad company in 1899. The disputed tract became part of a rail line, known as the "Pumpkinvine," that ran from Goshen to Shipshewanna, running through Middlebury. The part of the Pumpkinvine line at issue here is southwest of Middlebury and is adjacent to the northern border of a large farm owned by the Trust. In 1899, the guardian of Barbara Plank conveyed this strip of land to the Lake Shore and Michigan Southern Railway Company by a deed ("the Plank Deed"). The Pumpkinvine rail line was eventually transferred to a successor railroad, the Penn Central Corporation, who stopped rail service in 1981 and removed the tracks and ties.

In December 1993, the Nature Trail paid Penn Central $100,000 for the seventeen-mile Pumpkinvine corridor, including the disputed tract conveyed by the Plank Deed.[1] The Nature Trail is a not-for-profit corporation formed for the purpose of transforming the Pumpkinvine corridor into a "rails-to-trails" greenway and park. At the time of this conveyance, Penn Central was a defendant in a class action filed by Fern Firestone ("the Firestone class action"), which sought to determine the ownership of the now abandoned rail lines formerly operated by Penn Central.[2] The Trust was a member of the plaintiff class in the class action. The Nature Trail was not a named defendant and opted out of class membership.

On February 16, 2001, the plaintiff class entered into a settlement agreement with Penn Central, now known as American

---

1. The first deed conveying the corridor was dated December 16, 1993, and was recorded on January 3, 1994. A corrective deed was issued on January 3, 1994, and was recorded on February 1, 1994.

2. The class action was initially filed in Hamilton County but was later transferred to Boone Circuit Court.

Premier Underwriters ("APU"). Pursuant to the settlement agreement, the parties agreed that the railroad company had only acquired an easement in the disputed tract. This settlement agreement was approved by the Boone Circuit Court on August 15, 2001. On October 25, 2004, pursuant to the terms of the settlement agreement, the Boone Circuit Court entered a declaratory judgment order regarding the properties at issue in Elkhart County, including the disputed tract.

On April 17, 2008, the Nature Trail filed a complaint in Elkhart Superior Court against the Trust, seeking to quiet title of the disputed tract in favor of the Nature Trail.[3] The Trust responded by filing an answer and a counter-claim against the Nature Trail on June 9, 2008. In its counter-claim, the Trust claimed that the declaratory order on the settlement agreement of the class action established that it was the fee simple owner of the disputed tract and that it had acquired the disputed tract through adverse possession. After answering the counter-claim, the Nature Trail filed a motion for summary judgment on March 3, 2009. The Trust filed its own motion for summary judgment on April 3, 2009. On August 6, 2010, the trial court entered an order granting partial summary judgment in favor of the Nature Trail, which quieted title to the disputed tract in favor of the Nature Trail.[4] The Trust now appeals.

### Summary Judgment

As explained by our supreme court in *Dugan v. Mittal Steel USA Inc.*:

A party is entitled to summary judgment upon demonstrating the absence of any genuine issue of fact as to a determinative issue unless the non-moving party comes forward with contrary evidence showing an issue of fact for trial. An appellate court reviewing a trial court summary judgment ruling likewise construes all facts and reasonable inferences in favor of the non-moving party and determines whether the moving party has shown from the designated evidentiary matter that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. But a *de novo* standard of review applies where the dispute is one of law rather than fact.

929 N.E.2d 184, 185–86 (Ind.2010) (citations omitted). Our standard of review is not altered by the fact that the parties filed cross motions for summary judgment. *Kumar v. Bay Bridge, LLC,* 903 N.E.2d 114, 115 (Ind.Ct.App.2009). Where the trial court makes findings and conclusions in support of its entry of summary judgment, we are not bound by such findings and conclusions, but they aid our review by providing reasons for the trial court's decision. *Id.* at 116. If the trial court's entry of summary judgment can be sustained on any theory or basis in the record, we will affirm. *Id.*

### Discussion and Decision

At issue here is who owns the disputed tract, and the resolution of this issue large-

---

3. The Nature Trail's complaint also sought damages from John Hochstetler in connection with cutting of trees on the disputed tract. The trial court did not grant summary judgment on this issue.

4. The trial court expressly noted in its order granting partial summary judgment that "[t]here is no just reason for delay, and the Court hereby directs entry of final judgment

on these issues." Appellant's App. p. 9. *See* Ind. Trial Rule 56(C) (a summary judgment on less than all the issues or claims "shall be interlocutory unless the court in writing expressly determines that there is no just reason for delay and in writing expressly directs entry of judgment as to less than all the issues, claims or parties.").

ly depends on the nature of the interest conveyed in the 1899 Plank Deed. The Trust claims that the Plank Deed transferred only an easement to the railroad. The Nature Trail claims that the Plank Deed conveyed a fee simple interest to the railroad, which they subsequently obtained via the 1993 and 1994 quitclaim deeds.

■ The nature of the interest transferred by the Plank Deed is important because if "a railroad holds only an easement or lesser interest in the property upon which its tracks cross, the abandonment of the tracks triggers an extinguishment of the railroad's interest and ownership reverts to the fee simple owner with a deed containing the property within its description or, if none, the adjoining fee simple owners." *CSX Transp., Inc. v. Clark*, 646 N.E.2d 1003, 1005 (Ind.Ct.App. 1995) (citations omitted). Thus, if the Plank Deed transferred an easement to the railroad, then the railroad's subsequent abandonment of the tracks in 1981 extinguished its easement, and the disputed tract belongs to the Trust as the successor-in-interest to the grantor of the Plank Deed.

■ "However, where the railroad holds a fee simple interest in a railroad corridor, an abandonment does not trigger an extinguishment of the railroad's fee simple interest." *Clark*, 646 N.E.2d at 1005; *Tazian v. Cline*, 686 N.E.2d 95, 97 (Ind.1997) (noting that if railroad company held a mere easement, then easement would have been extinguished upon abandonment by the railroad, but not if railroad company held fee simple title); *Simkin v. New York Cent. R.R. Co.*, 138 Ind.App. 668, 670, 214 N.E.2d 661, 662 (1966) ("Title in fee simple is not lost by mere abandonment."). Thus, if the Plank Deed conveyed a fee simple interest to the railroad, then Penn Central's abandonment of the railroad tracks would have had no bearing on its fee simple interest, which the Nature Trail ac-

quired by way of the 1993 and 1994 quitclaim deeds.

■ The issue would therefore initially appear to be the nature of the interest conveyed by the Plank Deed. The Trust claims that this question was already answered by the Boone Circuit Court in the orders adopting the settlement agreement in the *Firestone* class action. To be sure, in the settlement agreement in that case, the parties agreed that Penn Central/APU's interest in the disputed tract was only an easement. The Trust argues that the Nature Trail is a privy of Penn Central/APU, is bound by the orders adopting the settlement agreement, and cannot attack these orders pursuant to the doctrine of claim preclusion. *See Perry v. Gulf Stream Coach, Inc.*, 871 N.E.2d 1038, 1048 (Ind.Ct.App.2007) (noting that claim preclusion acts as a bar to a subsequent action on the same claim between the same parties or their privies).

The Trust claims that all the requirements of claim preclusion have been met and that the Nature Trail's quiet title action is barred by the orders entered on the settlement agreement in the *Firestone* class action. However, we need not delve into the question of whether claim preclusion applies, because the Boone Circuit Court's declaratory judgment order implementing the settlement agreement in Elkhart County contains a provision which excludes the action brought by the Nature Trail from the scope of the settlement agreement. Specifically, the declaratory judgment in the *Firestone* class action contains a provision, listed as Paragraph 8, which states:

> The Court further declares that *it is not within the scope of this Declaratory Judgment to resolve title disputes between individual persons which may occur as a result of conveyances of por-*

*tions of the Settlement Corridors prior to the entry of this judgment or otherwise,* and that such disputes, to the extent any have arisen or may arise, must be resolved by the individual parties concerned.

Appellant's App. p. 61 (emphasis added).

We agree with the Nature Trail that the current title dispute clearly falls within the scope of this exclusionary clause. The Nature Trail and the Trust are in dispute over the title to the disputed tract as a result a conveyance of a portion of the Pumpkinvine rail line that occurred prior to the entry of the declaratory judgment. Therefore, the current dispute was not within the scope of the declaratory judgment in the *Firestone* class action. Accordingly, the trial court did not err in concluding that the Nature Trail's current quiet title action was not precluded by the declaratory judgment order issued in the *Firestone* class action.

The Trust claims, however, that Paragraph 8 is inapplicable, citing *Firestone v. American Premier Underwriters, Inc.,* 891 N.E.2d 151 (Ind.Ct.App.2008), *trans. denied.* In *Firestone,* the trial court issued an order enjoining plaintiff Bunker Farms from pursuing a quiet title action against APU, based on the declaratory judgment entered in the *Firestone* class action. *Id.* at 152. Bunker Farms appealed, claiming that their action fell within the category of title disputes excluded from the scope of the declaratory judgment by Paragraph 8. Bunker Farms did not deny that the land at issue in that case was subject to the declaratory judgment nor did it deny that it was a member of the plaintiff class in the *Firestone* class action. *Id.* at 154. Instead, "[t]he only claim on appeal is that Bunker Farms may pursue its quiet title action under the exception set forth in Paragraph 8 of the declaratory judgment." *Id.*

On appeal, we held that the settlement agreement disposed of all claims in property between APU and class members, which included Bunker Farms. *Id.* We rejected Bunker Farms' interpretation of Paragraph 8 to allow its separate suit against APU, concluding that such an interpretation "would eviscerate the settlement agreement and the declaratory judgment" because "[m]any, if not all, disputes over ownership between APU and class members would fall within Bunker Farms' interpretation." *Id.* at 154–55. Instead, we concluded that Paragraph 8 "speaks to parties, not including APU, who might dispute who has the ownership of the subject real estate. For example, Paragraph 8 would apply if Bunker Farms and 'John Doe' disputed which of them was entitled to whatever rights might exist." *Id.* at 155. Any substantive argument Bunker Farms had regarding whether it or APU owned the land should have been raised before the conclusion of the class settlement. *Id.*

We agree with the Nature Trail that *Firestone* is not controlling under the facts of the case before us. Importantly, the plaintiff in *Firestone* was a member of the plaintiff class. Here, the Nature Trail was *not* a member of the class. Instead, the Nature Trail is more akin to the hypothetical "John Doe" mentioned by this court in *Firestone* to whom Paragraph 8 would apply. To read Paragraph 8 to permit the Nature Trail's quiet title action would *not* eviscerate the settlement agreement, which would control any dispute between the *parties* to the settlement agreement. To the contrary, to read Paragraph 8 as the Trust would have us read it would effectively read Paragraph 8 out of the declaratory judgment. We therefore conclude that the Nature Trail's quiet title action fits within the category of disputes

excluded from the declaratory judgment by Paragraph 8.

The Trust further claims that the Nature Trail's action was precluded by Paragraph 4 of the 2001 order approving the settlement agreement, which provides that the "Settlement Agreement provides the exclusive remedy for Class members and any successors in interest *vis-à-vis* APU and USRV with respect to ownership of abandoned rights-of-way in Indiana owned or operated by APU's predecessors." Appellant's App. p. 585. The Trust claims that the Nature Trail is APU/Penn Central's successor in interest and that the settlement agreement therefore provides the Nature Trail's exclusive remedy. We disagree. The language in Paragraph 4 does not refer to APU and its successors in interest. Instead, it refers to the "class members" and *their* "successors in interest" and any claim they might have against APU/Penn Central. And again, Paragraph 8 of the declaratory judgment explicitly excludes from the scope of the settlement agreement the type of action brought by the Nature Trail.

In short, the trial court properly concluded that the settlement agreement in the *Firestone* class action, and the trial court orders approving the settlement agreement, did not act to preclude the Nature Trail's quiet title action against the Trust.

■ This leaves us with the question of the propriety of the trial court's conclusion that the Nature Trial did in fact possess a fee simple interest in the disputed tract. Notably, the Trust does not argue in its appellant's brief that this portion of the trial court's order was improper; instead, its argument is focused solely on its position that the quiet title action was precluded by the settlement agreement in the *Firestone* class action.

In its appellee's brief, the Nature Trail claims that the Trust admitted that the Plank Deed conveyed a fee simple interest and that the quitclaim deed conveying the disputed tract to the Nature Trail therefore conveyed a fee simple interest to the Nature Trail. We agree with the Trust that this is an improper characterization of the record. The Trust explicitly denied in its answer that the Nature Trail was the owner of the disputed tract, and consistently argued to the trial court that the settlement agreement in the *Firestone* class action established that Penn Central had only an easement in the disputed tract, which easement disappeared when Penn Central stopped using the tract as a railroad and abandoned its interest.

The trial court, in its order granting summary judgment, however, concluded that the Nature Trail held a fee simple interest in the disputed tract. And in its appellant's brief, the Trust did not directly challenge this conclusion, and instead focused solely on its preclusion claim. In its reply brief, the Trust cogently counters the Nature Trail's claim that the Trust admitted that the Nature Trail holds a fee simple interest in the disputed tract, but the Trust again fails to directly attack that portion of the trial court's summary judgment order concluding that the Nature Trail held a fee simple interest. Instead, the Trust focuses its appellate argument on the issue of claim preclusion, a position we have rejected. We therefore conclude that, for purposes of appeal, the Trust has waived any argument regarding the propriety of the trial court's conclusion that the Plank Deed conveyed a fee simple interest to the railroad and that Penn Central conveyed this fee simple interest to the Nature Trail via the 1993 and 1994 quitclaim deeds.

■ But even if the Trust did not waive this argument, it would not prevail on the

merits. The Plank Deed provided in relevant part:

> William G. Plank, Guardian of Barbara Plank, a person of unsound mind, as such guardian, by order of the Elkhart Circuit Court of Elkhart County in the state of Indiana entered in order book No. 23 of said court, on page 450, *conveys to the Lake Shore and Michigan Southern Railway Company, for the sum of $1.00, the following real estate in Elkhart county and state of Indiana*, to-wit: A strip of land 80 feet wide, the same being 40 feet on each side of the center line of said Railway Company's railroad track, as the survey therefore is now located, through, over, upon and across the following described real estate situate, lying and being in the township of Middlebury, county of Elkhart and state of Indiana, to-wit: The south half (1/2) of the west half (1/2) of the north-east quarter (1/4) of Section twenty-one (21), township thirty-seven (37) south of range seven (7) east, containing one acre and 31/100, more or less.

Appellant's App. p. 41 (emphasis added).

Although the consideration appears to have been nominal, the Plank Deed contains no limiting language, does not refer to any specific use, nor does it transfer a "right of way." Instead, it conveyed to the railroad company a "strip of land." We therefore agree with the trial court that the Plank Deed conveyed fee simple title to the railroad. *See Tazian*, 686 N.E.2d at 97 (concluding that deed conveyed fee simple interest to railroad where deed used language "grant and convey and warrant," conveyed a "strip of land" instead of a limited right of way, consideration did not appear to be nominal, granting clause did not limit the uses and purposes of the strip of land, and *habendum* clause referred to the grant being "forever."); *Poznic v. Porter Cnty. Dev. Corp.*, 779 N.E.2d 1185 (Ind.Ct.App.2002) (concluding that deed conveyed fee simple interest to railroad where deed used language "grant, bargain, sell, remise, release, alien, and confirm," referred to a "strip of land" instead of a right of way, referred to grant being "forever," and consideration was not nominal, even though deed did contain language referring to transaction as being for "railroad purposes.").

Because the Plank Deed conveyed a fee simple interest to the railroad company, the Penn Central quitclaim deed conveyed that fee simple interest to the Nature Trail. As this conveyance preceded the settlement agreement in the *Firestone* class action, it is excluded from the order entered in that case and the Nature Trail is not precluded from bringing the current quiet title action. The trial court properly granted summary judgment in favor of the Nature Trail.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.